# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR417-208 |
| | ) | |
| DANIEL MARTIN | ) | |
| | ) | |

# ORDER

The Government seeks the pretrial detention of defendant Daniel Martin, who is charged in Count One of the Indictment with conspiracy to possess with intent to distribute, and distribute, controlled substances and to manufacture crack cocaine. Doc. 1 at 1-2 (alleging a conspiracy involving 5 kilograms or more of cocaine, 280 grams or more of crack, 100 grams or more of heroin, and 50 kilograms or more of marijuana). Because of the quantities of the drugs alleged, defendant faces a *minimum* sentence of 10 years to life imprisonment. 21 U.S.C. § 841(b)(1)(A). And because he appears to have two prior felony drug convictions (more about that later), defendant would be subject to a *mandatory* life sentence. *Id.*

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, establishes a rebuttable presumption that serious drug offenders pose both a

significant risk of flight and a substantial threat to the safety of the community. § 3142(e)(3)(A) (where there is probable cause to believe a defendant committed a drug offense punishable by imprisonment of 10 years or more, "it shall be presumed that no . . . conditions [of release] will reasonably assure the appearance of the person as required and the safety of the community."). The grand jury's finding of probable cause is itself sufficient to trigger that presumption. *United States v. Hurtado*, 779 F.2d 1467, 1479 (11th Cir. 1985). The burden then shifts to the defendant to offer evidence that runs counter to the statutory presumption of flight and dangerousness, though the ultimate burden of persuasion remains with the government. *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). Even where a defendant comes forward with such rebuttal evidence, the presumption favoring detention is not erased but "'remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other [relevant] evidence.'" *Id.* (quoting *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985)); *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Ultimately, the government must show by a preponderance of the evidence that defendant is a flight risk and by clear and convincing evidence that he

poses a danger to the community. *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).

Defendant's effort to counter the § 3142(e)(3)(A) presumption focused almost exclusively upon evidence suggesting that he was not a risk of flight. Specifically, defendant's counsel proffered that despite knowing for several months that he was the target of a joint federal-state drug investigation, defendant did not flee but instead voluntarily appeared on two occasions before the Chatham County Superior Court after he was indicted. Further, the state prosecutor (now serving as a special federal prosecutor in this case) consented to a $25,000 bond in the initial state case. All the while, defendant knew that the United States Attorney was likely to bring federal charges. And once the federal indictment was returned, the prosecution team did not seek defendant's arrest but instead allowed him to appear voluntarily before this Court, which he did.[1]

Certainly this evidence, although not conclusive on the matter, weighs against the statutory presumption that defendant is a significant

---

[1] While defendant conceded that he had numerous prior drug arrests and convictions, he asserted that he had always appeared to face the music. The one prior "Fugitive from Justice" charge, he explained, was based on a misunderstanding about the timing of his appearance in Ohio and did not result in any penalty (a contention the government does not dispute).

flight risk. *See United States v. Oliver*, 2016 WL 1746853 at * 9 (W.D. Pa. May 3, 2016); *United States v. Fiandor*, 874 F. Supp. 1358, 1361 (S.D. Fla. 1995). It does nothing, however, to allay the Congressional concern that defendant's release will present a danger to the community because of the high risk of his continued drug dealing. *See United States v. Matthias*, 2017 WL 1536430 at * 14 (D.V.I. Apr. 27, 2017); *Oliver*, 2016 WL 1746853 at * 9; *Fiandor*, 874 F. Supp. at 1361. Nonetheless, as the government retains the burden of persuasion in a detention case, defendant's showing prompted the government to offer its own evidence relevant to the "factors to be considered" set forth in 18 U.S.C. § 3142(g).

The government established that defendant was a major supplier of marijuana for the drug conspiracy, packing and shipping large quantities of that substance from his home state of California to Savannah, Georgia, as well as to other states (Michigan and Tennessee). He typically received payments for the drugs in large cash shipments hidden in candy machines. The government played a recording of defendant's phone conversation with Eugene Allen, the head of the local drug organization, who was then serving a life sentence without parole for a Georgia murder conviction. Despite his incarceration, Allen answered

4

defendant's phone call immediately on a mobile phone smuggled inside the prison. Defendant told Allen that California law enforcement had just seized one of his $150,000 cash payments. Defendant stated his belief that the officers had just been lucky and expressed relief that they had not searched his home, where he had multiple "keys" and "bags" concealed. Defendant referred to himself as "prime suspect number one" and said that he was "locked and loaded."

Defendant did not offer any evidence to counter the government's showing that he continues to posses the means, the ability, and the will to ship large quantities of marijuana across the United States and enrich himself in the process. Defendant did suggest that any concern about his continued dangerousness upon release was mitigated by two facts: (1) he dealt only in marijuana, a non-narcotic drug with less risky properties than the other controlled substances involved in the conspiracy (cocaine and heroin) and (2) there was no evidence he had utilized firearms or engaged in violence, whether in this case or in the past. These very arguments, however, were considered and rejected by Congress when it determined that a defendant's "dangerousness" should serve as a sufficient basis for his pretrial detention. The legislative history reveals

5

Congress' intent that the "concept of defendant's dangerousness" -- the threat that he "might engage in criminal activity to the detriment of the community" -- "be given a broader construction that merely danger of harm involving physical violence." S. REP. NO. 98-225, at 12 (1983). The Judiciary Committee further "emphasize[d] that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" *Id*. at 13; *see United States v. Strong*, 775 F.2d 504, 508 (3d Cir. 1985) (Congress equated "drug trafficking with dangerousness to the community, an equation that has a reasonable basis in common experience.").

Nor did Congress confine its concern about the inherent dangerousness of drug trafficking to opiates or narcotic drugs. Rather, it expressly referenced those who traffic "in large amounts of other types of controlled substances" as well. S. REP. NO. 98-225 at 20. Thus, the rebuttable presumption of dangerousness is not limited to any particular category of drugs but arises in any case in which the defendant is charged with a drug offense punishable by 10 years or more of imprisonment, covering major marijuana offenders. *Id*. at 19 (the

presumption applies to "non-opiate controlled substances").[2] In other words, the seriousness of a drug crime is evidenced by its substantial penalty. *United States v. Moss*, 887 F.2d 333, 333-35 (1st Cir. 1989) (applying the presumption to a defendant charged with importing 60 pounds of marijuana). Consequently, there are legions of cases detaining defendants charged only with trafficking in marijuana rather than some "harder" drug. *See, e.g., United States v. Rueben*, 974 F.2d 580 (5th Cir. 1992); *United States v. Stricklin*, 932 F.2d 1353 (10th Cir. 1991); *United*

---

[2] Congress explained its reasoning for capturing all drug entrepreneurs under the dangerousness presumption thusly:

> It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence the most dangerous drugs are imported into the country, these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences. Even the prospect of forfeiture of bond in the hundreds of thousands of dollars has proven to be ineffective in assuring the appearance of major drug traffickers. In view of these factors, the Committee has provided in Section 3142(e) that in a case in which there is probable cause to believe that the person has committed a grave drug offense, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community.

S. Rep. No. 98-225 at 20.

*States v. Pritt*, 2014 WL 7338803 (N.D. W. Va. Dec. 22, 2014); *United States v. Cameron*, 2013 WL 3271003 (D.N.M. Jun. 14, 2013); *United States v. Aloma*, 2009 WL 3852786 (S.D. Ala. Nov. 16, 2009); *United States v. Ryan*, 2008 WL 4809229 (W.D. Wis. Oct. 27, 2008).

Of course, it is not just the statutory presumption but also all of the § 3142(g) factors -- nature of the offense, weight of the evidence, the defendant's individual characteristics and circumstances, and the seriousness of his danger to the community -- that must be assessed by the Court in a detention matter, at least once the defendant produces evidence in rebuttal of that presumption.[3] After considering those factors together with the presumption, the Court is satisfied that no form of conditional release will reasonably assure either the safety of the community or defendant's future appearance. First there is clear and convincing evidence (as required by § 3142(f)) that defendant poses a serious danger of continued drug trafficking if he is released. Not only is

---

[3] Recall that upon the government's proper invocation of the § 3142(e) presumption, the burden shifts to the defendant to produce some credible evidence that he will not endanger community safety. One court has noted that "[t]he clear and convincing evidence standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness." *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986). Here, defendant has offered no such evidence, only arguments that (as noted) Congress has found lacking. Regardless, the fact of his continued dangerousness is supported by the evidence, and the Court will illuminate it.

there compelling evidence that defendant was a member of the charged drug conspiracy, the government offered convincing proof that he was a key player in that conspiracy, supplying its members with large quantities of marijuana. Further, the evidence establishes that defendant's marijuana operation has not been disrupted in the least, much less shut down altogether, by law enforcement. As defendant conceded during a recorded phone conversation, he still has a considerable quantity ("multiple keys") of marijuana at his residence and was still ready to do business ("locked and loaded"). The details of defendant's marijuana supply business remain unknown to the government, and it is reasonable to infer that he could, and likely would, continue his drug enterprise if released. Defendant's criminal history reflects a continuing pattern of drug activity for many years, and here, the Court believes, "what's past is prologue." WILLIAM SHAKESPEARE, THE TEMPEST, act 2, sc. 1. There is no evidence that either defendant's prior felony drug convictions or his self-acknowledged perception that he was "prime suspect number one," has dissuaded him in the least from persisting in his drug business. Placing him on a GPS monitor (or imposing other stringent release conditions) is no more likely to curtail

*his* drug activities than confining Eugene Allen behind prison walls was his.

Congress has recognized that those in the drug "business" -- entrepreneurs like this defendant -- "pose a significant risk of pretrial recidivism." S. REP. NO. 98-225 at 20. Defendant has offered no evidence that takes him outside that paradigm. Therefore, considering the serious nature of the offense, the heavy weight of the evidence against defendant, his prior history of repeated drug crimes, and the strong likelihood that he will continue to traffic in drugs, the Court finds by clear and convincing evidence that no conditions of release will reasonably assure community safety.

The Court further finds that defendant has not sufficiently rebutted the statutory presumption that he is a significant flight risk. Defendant places great emphasis on his voluntary surrender to authorities as proof that he has no intention of running. But as numerous courts have held, such initial cooperation by a defendant is by no means conclusive evidence of his future appearance. *See, e.g., King*, 849 F.2d at 488-89 (fact that defendant knew for some 6 months that the grand jury indictment was imminent and chose to retain counsel and

contest the charges rather than flee was not sufficient to overcome the statutory presumption of flight, as defendant faced a minimum mandatory 10-year sentence and was aware of the government's damaging evidence against her, including a taped conversation); *Oliver*, 2016 WL 1746853 at * 9 (fact that defendant was on bond for 6 weeks in state system and voluntarily surrendered to federal authorities, while probative on the issue of flight, was not conclusive, and given that defendant faced a 10 year to life sentence, the court found that he presented too great a risk of flight (and too great a danger) for pretrial release). While defendant has been prosecuted, and convicted, in the past for state drug crimes, never before has he been federally prosecuted. And in no prior prosecution did defendant face a *minimum* 10-year sentence, much less the possibility of mandatory incarceration for the rest of his life.[4] *Oliver*, 2016 WL 1746853 at * 9. Moreover, defendant

---

[4] As noted earlier, defendant has multiple prior drug convictions, including 2 California felony convictions in 2012 (for possession of marijuana for sale and involvement in a drug conspiracy), an Ohio drug trafficking conviction in 2013, and a 2011 misdemeanor drug-possession conviction from California. It is undisputed that defendant faces "mandatory life imprisonment" under 21 U.S.C. § 841(b)(1)(A) if he has two prior felony drug convictions (and a 20-year minimum if he has just one such prior felony drug conviction). At the detention hearing, defendant's counsel referenced a California legislative decision to lower the penalty for marijuana offenders and suggested that the change was retroactive, thus reducing defendant's California felony convictions to misdemeanors. Counsel cited no controlling statutory provision in support of this claim, however. Nor is it certain how any such

now realizes how strong the government's case really is, for while confidential informant information is one thing, a recording of defendant discussing the details of his drug business is quite another. Defendant knows his goose is likely cooked. And he knows that from any conviction on the present charges, it would be a long, long time before he regained his freedom -- if he was ever able to do so. Defendant is an experienced traveler, and he has the financial resources as well as a powerful incentive to flee. Those considerations, when coupled with the statutory presumption of flight, are sufficient to establish by a preponderance of the evidence that no conditions of release will reasonably assure defendant's appearance in this case.

"In our society, liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). One such exception arises in serious drug cases, where the Bail Reform Act's preference for release "on the least restrictive . . .

---

state law change would operate under the federal sentencing laws. Further, the legislative history of the Bail Reform Act makes clear that Congress did not intend "that the pretrial detention hearing be used as a vehicle to reexamine the validity of prior convictions." SEN. R. NO. 98-225 at 22. In any event, the Court's detention decision in this case does not depend upon a proper interpretation of a recent change to California law, for even if it is assumed that defendant has *no* prior felony convictions (and thus does not face either a 20-year minimum or a mandatory life sentence), his exposure to a 10-year minimum is sufficient not only to trigger the § 3142(e) presumption but also to weigh so heavily on defendant's mind as to substantially increase his risk of flight.

conditions" (§ 3142(c)) changes to a preference for pretrial detention (§ 3142(e)). "[T]he [§3142(e)] presumption reflects Congress' substantive judgment that particular classes of offenders should ordinarily be detained prior to trial. To rebut the presumption, therefore, a defendant should present all the special features of his case that take it outside the congressional paradigm." *Stone*, 608 F.3d at 946. The special features of this case, however, establish that defendant is in the very heart of that paradigm: He traffics in large quantities of drugs, has been doing so for years, and retains the finances and the infrastructure to continue his drug business. He is the very type of person Congress had in mind when it first established "dangerousness" as a basis for pretrial detention. And given the strength of the government's evidence against him and the prospect of such a lengthy sentence, defendant's voluntary surrender does not overcome the statutory presumption of flight.

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private

consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED,** this  14th  day of September, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA